We have one case for oral argument before us today. We've already received the briefs and reviewed them. And I want to make sure I have the time splits correctly. Let's see here, Mr. Woodford, you're saving five minutes for rebuttal time, is that correct? That is correct, Your Honor. Mr. Belusco, you and Mr. Klontz are splitting your time 11 minutes and 4 minutes? Yes, Your Honor, that's correct. Okay. Then the case we're here to hear is Vehicle IP v. AT&T Mobility. Mr. Woodford, you may begin. Good afternoon. I'm William Woodford. I'm here on behalf of Vehicle IP. May it please the Court. There are four issues that were, four rulings by the District Court, two relating to claim construction, one relating to literal infringement, one relating to the doctrinal equivalence. This case must be remanded if Your Honors disagree with any of those rulings. All four are an independent basis to bring this case back to the lower court. And unless Your Honors would like to hear something specific, I plan to start with the… Yeah, I'd like to hear something specific. On page 16 of the appellate's opening brief, it asks that waypoint be construed to mean a geographical point of reference or destination. Under this proposed construction, if a route only has one point, that is its destination, is that the waypoint? So the claims require a plurality of waypoints. So yes, the destination would be a waypoint, but that would not fall within the claims because you need a plurality of waypoints in the claims. But that would be a waypoint? Under our definition, vehicle IP's definition, yes it would. Is that consistent with usage in ordinary maps and geography definitions? I believe it is, sir. So if we look at the ordinary meaning of waypoint, and we put in evidence of what that ordinary meaning is. We've got a patent from Motorola from 1992, instruction manuals for products from Garmin from that time period. We also put in evidence going from that point all the way forward to today. And all of that evidence shows that a waypoint does include intermediate points, which is what the court limited it to below, but also destinations. Reference me to the Garmin manual of records that shows that a waypoint is the destination. Thank you, please. So that would be at the appendix A1216, and it's right in the middle of the page. What was that page number? A1216. I'm looking there. And this shows in the middle of the page, it talks about storing your position in GPS, and it continues by saying this page also displays the bearing and range from the nearest waypoint. And then it talks about, which is typically the destination of your last trip. So there's A1216? Right. I see this in the manual. It says to update the initial time in the middle of the page. Where am I above or below that? If you just go below that, the first paragraph that starts the position on the initialization page. And what this reference is talking about, if you look at the last sentence. That reference is talking about the destination of your last trip as a waypoint, not the destination of your current trip as a waypoint. Isn't there a distinction there? There is a distinction. There is a distinction here. And this is showing the destinations. This particular reference shows the destinations certainly can be waypoints. No, it certainly does not show that. It shows that a prior destination can now be treated as a waypoint. It doesn't show that a destination is a waypoint. What have you got that shows me that a destination is a waypoint? Well, the patent itself in the example shows that destinations can be waypoints. In the figure two example that our opponents look at all the time, positions C and D are destinations and they are specifically called waypoints. Now, in that example, there is no discussion of whether position E is a waypoint or not. And, of course, there wouldn't be because that example relates to an out-of-route type of situation where you wouldn't use point E to determine if you're out-of-route on the way to the point. Is it your position that if it's a multi-destination trip that the intermediate destinations are waypoints? Are waypoints just reference points other than the destination points? Waypoints include destinations, intermediate destinations, or intermediate points that are not destinations. So, they would include all of those things because those would define the way. Even if you look at just a very colloquial way to use this term waypoint, you can't define the way unless you include all of those points including the destination. Are you familiar with the way the term waypoint has been used in orienteering for at least 100 years? Well, I'm generally familiar with it because I think that's the definition that our opponents try to use. That one single definition from the McGraw-Hill Dictionary is what they point to. What we've done is we've looked at the Motorola patent, which we haven't talked about, but the Motorola patent specifically... Reference me. Sure. So, this is on A1315. And this is column one of this Motorola patent from 92. Right around line 36 it begins and it says, the term waypoint generally refers to a desired destination or navigational reference point to be reached, which may be a final destination or one of a series of intermediate destinations or navigational reference points to be traversed. So, this is in the background section of a patent from Motorola. And Motorola was certainly in this industry, was familiar with how these terms are used. It creates a patent by several years. So, this is good evidence and we think outweighs the evidence of a dictionary definition from McGraw-Hill to show what people in the industry consider to be a waypoint. This is all military terminology, isn't it? GPS was originally a military product. That is correct. And the terminology was military terminology. Well, we don't have any evidence in the record of that, but that wouldn't surprise me if it was. So, let's go back to some of the examples that I guess were argued below. If you're going to go to the airport, just to the airport, you're saying that the airport is a waypoint? That's correct. If you have just one single destination. Yes. And if you make several stops along the way, those are waypoints also. So, the way this works in the context of the patent is the waypoints are sent from a server to a mobile unit that define where... I guess if I was doing this on a map and I was to locate a location, then another one, then another one, then my destination is the ridge in the mountains. Along the way, I'm going to go to the river, I'm going to go to the big old tree. Then I can figure my way, plot my way in between each one and figure out maybe even how many steps I'm going to take to get there. Figure out the length of my step and maybe even figure out how long it's going to take for me to get to the destination. But is this the way that the accused devices operate? Similar. I think what... Don't they only compute each stop along the way and nothing else? No, I don't... Each waypoint, rather? What these planes are directed to, they're directed to determining a more accurate expected time of arrival. The way it does that is it provides a plurality of waypoints. The plurality is because you want to have one waypoint at the destination and at least one intermediate point. So, even if you have a single destination trip like going to the airport, when you plug that into the device that would be covered by this patent, it would generate a route and would indicate certain markers along the way leading up to it. So, it could more accurately... If you pass X intersection at this time, it knows you're either ahead of schedule or behind schedule. So, those are that. And so, you have to know the final destination to calculate all the time. Right. That's exactly right. And that's why it's trying to be more accurate. Think of if you only had a single waypoint at a destination. It's always at the crow flies. Right? So, you can't... Based on where you are, you can't be more accurate than that straight line assumption, which is not very good. Do we know if the accused devices use these kind of reference points in calculating their estimated time of arrival? Or do they just say, here's where you're starting, here's where you're going to, and they map it out using roads and have some other map? They don't have anything saying you're late at this waypoint, you're late at this point. It's just an overall time. What they do is they have... They break up the route so they would have their destination. They break it up and they use different terminology, but it's essentially broken up into maneuvers. So, roughly, each turn would be a separate portion of the route. And what they do is they determine where the vehicle is with respect to that waypoint. And then when they figure... Is each maneuver a waypoint? Yes, it would be. Each of these maneuvers, the way the system breaks them down, it's a waypoint that is used. There's an expected time of arrival determined at that waypoint, which then can carry through and ultimately figure out where your timing with respect to the destination is. So, part of the route is get on 395 at a certain exit. And it knows that from leaving your house to getting on that exit, you're supposed to be there at a certain time. And you're either late or early. That's how it readjusts the estimated time of arrival. That's exactly right. You're into your rebuttal time, if you want to reserve it. I do want to reserve it. Mr. Belusco, do I have that correct? Did I pronounce your name correctly? Belusco? It's Belusco. You're anglicized, of course. It may have pleased the court. Starting with the waypoint issue. The only time that waypoints are mentioned in this patent is in the context of Figure 2, a multi-destination route. And waypoints are only intermediate points. And they even use the word intermediate waypoints. There's no suggestion in the patent whatsoever that waypoints be the final destination. In fact, they use the phrase still en route in reference to waypoints. That is correct, Your Honor. And moreover, I should add that there is a parent patent here which dealt with destinations. This was a later patent that was based on the same spec that then added claims dealing with waypoints as opposed to destinations. So it's very logical that the waypoints here, which were confined to Figure 2, were only things along the way, the very meaning of waypoints. Can I ask you the same question I asked your colleague? Are intermediate destinations both destinations and waypoints? Or are the waypoints, in your view, only the reference markers along the route? Well, Your Honor, at least in Figure 2, they refer to, in the patent, as having a waypoint could be a destination on a multi-destination route. Of course, in the accused products, we don't have multi-destination routes. You can only put in, in one trip, one destination. If you decide to stop that or anything, then you have to punch in a new destination and you get a new route. So we don't have a multi-destination device that can be accused here. I understand others may, but that is not what we have. But their claim doesn't only cover multi-destination routes. I mean, it could cover a single destination route as well. It's conceivable it could, but the point is that those waypoints are intermediate points. Right, but they don't have to be destinations. They do not. They can be, but they don't have to be. I would agree with that, Your Honor, but they're always intermediate. So the fact that your product isn't a multi-destination route doesn't necessarily get it out of the claims, does it? No, Your Honor. What gets us out of the claims is a combination of things. First, with respect to how our devices work, they deal with travel time to these markers, I think is the term you've used. And those are added up, and you end up with something that gives you a cumulative travel time, typically. But there was, at least in the case of Verizon, one discontinued build, which actually gave you a clock time at your final destination. But because that's only at the final destination. Can I take you back to waypoints? I know you want to talk about time. Sure. I understand that your device works, or I'm not sure which device you have, but you're talking about it. Is it the one that does, you know, it plots the route and it says it's going to take this long until you turn here, and this long until you turn here, and then it measures whether you're at that turn early or late to readjust the time of arrival? Generally, it doesn't give you any indication, necessarily, of every... Well, how does it adjust the time of arrival? It figures out, it first off starts with what it believes would be how much time it would take to go to the first marker. But if they get behind schedule there, because they know they're not at the first marker because of GPS, then it's going to do some calculation that will add time to that first leg. But then all the others are kept as they were until you get in there. Right, but that's what it's doing, though. It's got markers along the way, whether it's reference points or it's where you're supposed to turn or wherever, and if you're not there on time, it adds extra time to the time of arrival. Yes, that is correct. I would also point out, I mean, they've already... So if you speed up, it subtracts time from the estimated time? It would do that as well if you were making better time, because then it will assume that you get to a particular marker in advance of the time interval that was expected. And then that's added or subtracted, as the case may be, to all the others, which changes your remaining travel time. So I would also point out that the spec here is very clear as to these being intermediate points. There's no real doubt about that, so I don't think we need to go to extrinsic evidence. Clearly, we put in a dictionary, A617, that shows that they're intermediate. But I would point out that we have kind of one unusual piece of information. Let me take you back. Doesn't the AT&T device describe their markers as they could be with waypoints? I'm going to let my colleague, since I'm the Verizon lawyer, if you don't mind, during his four minutes address the AT&T device specifically. But I would point out we have this... If you would look at A1157, we actually do have one of the inventors, a document that was provided as evidence of conception. We submitted an interrogatory, they said, here is a conception document with respect to waypoint and, well, the invention. And there, the only term, it's not waypoint, it's via point. But interestingly enough, they claim that that's a conception document, so it has to support this waypoint. The only thing in there is via point. And it's defined specifically as something between the beginning and the final destination, exactly what is the definition that's consistent with the specification. What's the state of that again? A1157. All right. It defines via points as intermediate points between the source and the final destination. So to the extent that is supporting the conception, which they claim, that's exactly consistent with Figure 2. It's exactly consistent with the district court's claim construction. The very yellow highlighting indicates something that's confidential, or is it just... Yes, because they provided that document under a protective order. Yes. Keep that in mind. Oh, I am mistaken. I'm advised by my counsel that was highlighting for emphasis added for when we provided... But the entire document itself is more confidential. Okay. So is there anything else on waypoint that... Can you go to the court's construction of waypoints and where the court added the parenthetical limitation and whether that's appropriate or not? Well, clearly negative limitations are appropriate. There's no rule against them of any case that I'm aware of from this court. What is clear is that under O2 micro and every penny case, which we cited in our brief, is that the issue of claim construction is one that's to go to both meaning and scope, and that's an issue of law. We had a situation here where, as to the terms that were raised, the dispute went to their scope, not just the meaning of a word. And we had to have that scope defined so that the jury would be doing what they properly should do. And Judge Stark is very concerned about, well, you just tell me what it is. Is that giving enough to the jury? So in O2 micro, as it pointed out, there was a case where only if didn't have any meaning problems, it had a scope problem. So it was added here by the court, and we suggested it to make sure that the scope was clear because it was very clear to us what the plaintiff intended to do was to take a certain argument and then run with it to the jury and argue that it's broad enough to include this. So that's why it was put in, because the real battle in this claim construction was focused on scope. Anything else? Any questions? I'll let my colleague... Oh, let me just, one thing I do want to mention, Your Honor, is athletic alternatives I think is kind of the closest case here where the court went through and construed a limitation, and that construction was used to determine first that there was no literal infringement, but it also went on to note that it's construed between a minimum and a max to require three offsets. And it pointed out very specifically that because of the scope of the claim as construed, that under your specific exclusion doctrine, that it would include any equivalents that only had two offsets. So it was the claim construction itself that jumped to there. And I'll note that that case was relied on by Judge Stark, but it wasn't even raised by the appellant in their opening brief, and only in their reply did they raise it. And I'll note that they represented it improperly in the case of, they said that it was a case that involved clear disclaimer in the prosecution. And they cited a part of a sentence for that position on their brief on page 27. Well, the actual sentence in its fullness at 73 Feb 3rd, 1582, is exactly the opposite of what they put there. In that case, very specifically, the court noted that prosecution disclaimer was not found, but they said under the specific exclusion rule, you still would not reach the so-called equivalent there. So I just want to point out... We're out of time now. Okay. Thank you very much, gentlemen. Your Honor, David Klontz for the TELTNAV and AT&T defendants, and may it please the court, I think I heard a question concerning the AT&T products and how waypoints are used and how it calculates the time between these. I think materially there's no real difference in these products as far as literal infringement. They have a destination that may be a time or it may be a remaining travel time, time being time of day or remaining travel time. All of these products use various nodes, but the only thing they use on these various nodes to calculate that last number is a time interval. In other words, how much time between or how much time to. The reason it does it that way is so it can add them all together. And time intervals are very different in that sense than a time of day because you can't add a series of times a day together, but you can add time intervals, and that's the reason they all work that way. There's some outlier issues regarding the ability to download multiple destinations from a website. And there's also an outlier issue about being able to search for other destinations. This is discussed in the briefing, but let me explain that that's a different issue and all it goes to is the fact that all of these products, even if you go search on a website for different places you may want to visit, these handsets can only pick one destination at a time and give you a route there. I, the user, have to go in and I have to pick a different destination from among those that I may have downloaded. They're not that smart in that respect. They simply do not do multiple destination routes. And we can't impugn... But if you plugged in a destination and then you decide halfway through the trip you want to stop at a restaurant, then you plug in the new destination for the restaurant. It may even have something that shows you restaurants as you're going along and you can pick them out. After you're done at the restaurant can you just put resume trip? You can go, and it depends on the specific implementation, specific product, you can pull up the last destination and choose that to be your destination. So you're resuming the trip you were on. I know you're saying it again, but it's essentially the same thing. But what does that make the restaurant? A waypoint or a destination? To the handset it's the destination. As I understand it, it becomes a new destination that you choose. You get there, you eat, you come back out. It won't say resume trip because you're at the restaurant already. You can select the last destination you were going to. You have to go back into the last prior destination. It would be from a prior destination. Let me ask you a question so that your opponent has a chance to respond and rebuttal in your red brief on page 7. You say that arguments regarding the navigator product or any arguments directed to TRAC premium product have been waived by the impellant? Well, they have any independent arguments. Let me explain that. The navigator product is the navigation product. It's the handset product just like you type in the destinations and such. TRAC premium is a separate bigger product that's used for fleet management and tracking vehicles. One component of that is navigator. The navigator issues are all there as far as TRAC premium. There's just no independent issues related to TRAC premium. It all comes down to the navigator product in the AT&T case and it really all comes down to simply the issues of whether the waypoints on the way to that final destination are using times of day, which they are not, and for good reason because it has to be able to add them together and that there's one destination at a time in the products that we use. Do you think their product is using times of day to measure the waypoints too? The plaintiff's product? They have to do the same thing to convert the math. There's no way their products are saying you're at waypoint at 3.30 and you're at the next waypoint at 3.45. The computer or whatever, it's not even doing it in an hour-minute format. It's doing it in some other kind of computer language. It may be displayed that way, but it's not calculated that way. First, I don't think vehicle IP has a product, but there's two uses. One is to use these waypoints and add the points together along the way, but there's a very different use for the time of day that it uses at these waypoints, and that is to look at that time of day and compare it to the time it's supposed to be there and figure whether it's early or late. Sure, but when the computer is doing that comparison, the computer is not thinking it's 3.15 and I was supposed to be here at 3.30. It's using some computer way of numbering that I don't even know about, but it's not using 3.15 and 3.30. Well, the difference, this goes to a little bit of their format argument. This is more than format. I can use a stopwatch to tell how long it's going to take me to get somewhere, but I cannot compare an appointment time with an expected time of arrival unless I have a clock. But if you're looking to achieve an ETA, regardless of which method you use, you're going to have to go back and say 3.30. I mean, you could say your time of arrival is at 3.30 or your time of arrival is at 15 minutes, that's 3.15. This is 3.15. If it doesn't matter, then you look at this and go, okay, I'll be there at 3.30. What's the difference? The difference is that it's not just simply I'll be there in 15 minutes. That's not what the patent is using the expected times of arrival for. If I could add this one point, they characterize their true invention as being a technique to determine in time more accurately. It's to see if a driver's gone off on a fraud. I think their invention is more than that. The claims require a dispatcher. They require a mobile unit, and they require determining expected time of arrival. We haven't heard any discussion of what the invention described in the patent is in the context of a dispatcher. The purpose is you have a dispatcher, and it says it at the very beginning of the patent. You have a dispatcher. Further, transportation systems would benefit from a dispatching function that monitors and directs travel, route, and expected time of arrival of its carriers. For example, dispatchers, long haul, or local vehicles desire a system that allows access to expected time of arrival to make routing and dispatching decisions. Later on at column 8, it explains that a dispatcher is more concerned not with where the vehicle is, but only when a vehicle cannot reach its destination at a point in time. You're in three minutes over your time, but we've taken you there, so no problem. Go ahead and conclude. Okay. What I want to conclude with is having read the brief, the appellant's briefs, you would think that this is just some navigation patent. It's not. This is in the context of vehicle management with the dispatcher that's using expected time of arrival. And what's it using it for? Well, you can look at Figure 4, and you can see what it's using it for. It's using it to figure out if it's going to get there early or late and to change the routing schedules and such. It's not just how long it's going to take you to get there. Thank you, Your Honor. Mr. Woodford, I'm going to add two minutes to your time. Thank you, Your Honor. So I'd like to start first with that issue of waiver that was raised. I think I heard my colleague's answer correctly. I think that issue is non-existent because he just acknowledged that track premium, the core of that is Navigator. And that's what we're talking about. That's what's at issue in this case. Below, there was actually representations to the court where that statement was made. Specifically, they're in the record at page 2749. 2746, there's also that discussion. The declarations below, there's one from Mr. Renard that said that track premium, the core of that is Navigator. So there's really no way to waive that because that's exactly what we've been talking about this entire time. So I want to touch on athletic alternatives as well. Also touch on your traversal after the rejection at 3115 and preceding pages. I find that bothersome as well. It strongly supports what your opponent is saying. 3115 and preceding pages. So this relates to that Ross patent. And the Ross patent had really disclosed two things. The part the examiner relied on for the rejection was a time interval. An estimated time of arrival that is a time interval compared to another time interval to determine for an unscheduled delivery. There's another embodiment that shows that it also can be a time of day, estimated time of arrival. So that patent shows both. The examiner actually relied on the time interval to say that these claims rejected the claims on that basis. And what we see that to mean is that the examiner understood that time, in this instance, covers both. Time intervals, remaining time, those things are an expected time of arrival. That's how the examiner applied it. The patentees didn't disagree with that. In fact, what they did instead is they amended and said, and this is an apparent patent, we're going to amend to require that there be a comparison to an appointment time. And, of course, later on the court used that. So with respect to that, the file history itself, the lower court did not agree with us that the examiner applied time intervals to expect time of arrival because of the difference between estimated and expected, even though everyone sitting here today has acknowledged that they generally mean the same thing. There's no distinction between those two. But that's how the judicial court said, I'm going to ignore what the examiner did to support his finding. The comparison of appointment times, which was then used separately by the court, it really brings up an interesting path that the court took, which I think is the wrong path. The ordinary meaning of time is broad. It includes both formats. There's no dispute. Nobody has argued contrary to that. The specification itself, you can say that people have argued that, but the court itself, in his ruling, he said, and this is exactly what the court's order says, neither the claims nor the specification expressly define whether the term includes or excludes remaining travel time, which is the crux of the dispute between the parties. So the court itself is saying, the lower court, that there is no exclusionary language in the claims, no exclusionary language in the specification, and, of course, with the file history discussion, he didn't find a disclaimer there. So we're sitting in a situation where we have no exclusionary language. If you look at the court's recent decisions in Thorner and the 15 cases that have followed Thorner that apply this same sort of thing, ordinary meaning applies except for two exceptions, no lexicography here, no disavowal of claims scope, no clear and unmistakable disclaimer. None of that exists. The way the lower court got there and said, well, I'm going to look at appointment times and that comparison, and I'm going to say, well, the only disclosure of appointment times is the time of day, and he made a factual finding that there's no basis for, only attorney argument, the only evidence of record shows otherwise, that since appointment times are a time of day, this must be time of day as well. And then from there went into backfill, I would say, with Atlantic reasoning by saying, well, I see, I've already concluded that it's time of day, so now I'm going to backfill and say, well, look, when the patent's talking about this, it uses it in a time of day format. But what we know from the spec is that it discloses remaining time and time of day, because I think it was pointed out during my colleague's argument, that you need to determine a remaining time to determine a time of day. What's your response to my question that I posed to your opponent about the use of the parenthetical materials by the court in claim construction? I think generally that should be reserved for a disclaimer, and the reason why is because of what happened with the doctrine of equivalence here in this situation. Basically, by putting in that disclaimer, the court foreclosed incorrectly, and I think our case is like Deere and Brilliant in that way and not like Authentic Alternatives, and I'll get to that in a second. But that's the result of that. And for juries, that would have been hugely problematic, because it's hard to go in and argue doctrine of equivalence when you have a basis to do so with a negative limitation that says that's not included. The jury's going to have a hard time understanding that what the judge is saying is that's the literal scope and not the doctrine of equivalence. Now, the lower court here went even further and said I'm vitiating my own negative limitation and created that binary choice that Deere and Brilliant and those cases say you cannot do, and that's what happened here. If we agree with the district court's construction of waypoint to not include the final destination, does that mean that your opponents don't infringe? No. And why not? I started with that, because the remaining times are determined at all the intermediate points. So it's also determined at the final destination, but all the intermediate points along the way. So if waypoint is unchanged and ETA is changed, then it all comes back. But even if both constructions are kept the same, there's still the issue of literal infringement, which we haven't discussed too much here, and there's the issue of the doctrine of equivalence. I just told Judge Rainer, I just wanted to say that I was surprised that none of the counsel, given all the discussion of time in here, none of you cited Ulysses, the obscenity case in which the court spent the entire opinion talking about how it had made him rethink the nature of time so it couldn't possibly be obscene. We could have, but we've been admonished about extrinsic evidence. I think that's a good point to close here. Thank you for your fine arguments today. This court is now adjourned. All rise. The court is adjourned. There's one witness. Ten a.m.